UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

STATE OF OKLAHOMA, *et al.*,          )
                                      )
    Plaintiffs,                  )          Civil Case No.
                                      )          5:21-cv-104-JMH
v.                                    )
                                      )          **MEMORANDUM**
UNITED STATES OF AMERICA,             )          **OPINION AND ORDER**
*et al.*,                             )
                                      )
    Defendants.                  )

* * *

This matter comes before the Court on Defendants Steve Beshear, Adolpho Birch, Leonard S. Coleman, Jr., Ellen McClain, Charles Scheeler, Joseph DeFrancis, Susan Stover, Bill Thomason, D.G. Van Clief, and the Horseracing Integrity and Safety Authority, Inc.'s (collectively, the "Authority Defendants") Motion to Dismiss [DE 68] Plaintiffs' First Amended Complaint [DE 53], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for alleged lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In addition to Authority Defendants' Motion [DE 68], Defendants the United States of America, the Federal Trade Commission (FTC), Lina Khan, in her official capacity as Chair of the FTC, Rebecca Kelly Slaughter, in her official capacity as Commissioner of the FTC, Rohit Chopra, in his official capacity as Commissioner of the FTC, Noah Joshua Phillips, in his official capacity as Commissioner of the FTC, and

Christine S. Wilson, in her official capacity as Commissioner of the FTC (collectively, the "Federal Defendants") move the Court to dismiss Plaintiffs' First Amended Complaint [DE 53], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [DE 70]. In opposing Authority and Federal Defendants' Motions to Dismiss [DE 68; DE 70], Plaintiffs State of Oklahoma, Oklahoma Horse Racing Commission ("OHRC"), State of West Virginia, West Virginia Racing Commission ("WVRC"), State of Louisiana, Hanover Shoe Farms, Inc. ("Hanover"), United States Trotting Association ("USTA"), Oklahoma Quarter Horse Racing Association ("OQHRA"), Tulsa County Public Facilities Authority d/b/a Fair Meadows Racing and Sports Bar ("Fair Meadows"), Global Gaming RP, LLC d/b/a Remington Park ("Remington Park"), and Will Rogers Downs LLC (collectively, "Plaintiffs") move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. [DE 87]. For the following reasons, the Authority Defendants' Motion to Dismiss [DE 68] and the Federal Defendants' Motion to Dismiss [DE 70] will be denied in part, insofar as they seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, and granted in part, insofar as they seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Plaintiffs' Motion for Summary Judgment [DE 87] will be denied.

## I. DISCUSSION

This case arises from Congress' passage of the Horseracing Integrity and Safety Act ("HISA") and what Plaintiffs allege is an unconstitutional delegation of legislative power to a private organization, the Horseracing Integrity and Safety Authority, Inc. (the "Authority"). HISA grants the Federal Trade Commission ("FTC") authority to promulgate rules to address concerns with medication, alleged doping, and track safety in horseracing to bring more consistency to horseracing regulations than what state-based horseracing laws provide. Plaintiffs' primary issue with the legislation is that the FTC's rules will be based on proposed standards offered by the Authority, which Plaintiffs' claim the FTC is required to adopt, making the FTC subordinate to the Authority.

### A. JURISDICTION

Before considering the Parties' arguments concerning requests for dismissal for failure to state a claim and summary judgment, the Court must first determine whether Plaintiffs' claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, as it is a threshold matter. "The jurisdiction of federal courts is limited to 'cases' and 'controversies.'" *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 WL 982464, at *4 (N.D. Tex. Mar. 31, 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992) (citing U.S.

Const. art. III, § 2))). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Moreover, Plaintiffs must "meet their burden of showing their claim is ripe for review" to overcome concerns "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342 (6th Cir. 2009) (internal quotation marks omitted). The Court must "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted).

## 1. STANDING

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (quotations omitted). "To be 'fairly traceable to the challenged action of the defendant,' the injury must 'not [be] the result of the independent action of

4

some third party not before the court.'" *Nat'l Horsemen's*, 2022 WL 982464, at *4 (quoting *Lujan*, 504 U.S. at 560). Redressability will not be shown if it is "merely 'speculative[ ]' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. Since the "determination of standing is both plaintiff- and provision-specific," plaintiffs must demonstrate they have standing for each claim they seek to press. *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008); *see Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[S]tanding is not dispensed in gross[.]").

"[A]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). "But a plaintiff who challenges a 'statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Nat'l Horsemen's*, 2022 WL 982464, at *5 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Here, Plaintiffs challenge the rulemaking mechanism in HISA, which they allege is an unconstitutional delegation of power that permits the Authority, a private entity, to regulate without sufficient government oversight. HISA requires that the

regulations take effect on July 1, 2022, and Plaintiffs will be objects of the regulations adopted under HISA. *Nat'l Horsemen's*, 2022 WL 982464, at *5 (citing §§ 3051(14), 3055(a)). "HISA states that the FTC 'shall' approve rules proposed by the Authority if it finds that they are 'consistent' with the statute itself and with applicable rules." *Id*. at 6 (quoting § 3053(c)). Moreover, "the Authority 'shall' propose rules to develop the programs on the topics outlined in the statute while taking into consideration the guidance outlined in the statute." *Id*. (citing §§ 3055(a)–(d), 3056(a)–(c)). "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974) (citing *Carter v. Carter Coal Co.*, 298 U.S. 238, 287 (1936)). So, presuming the FTC "'act[s] properly and according to law,'" as the Court must, *Nat'l Horsemen's*, 2022 WL 982464, at *6 (quoting *FCC v. Schreiber*, 381 U.S. 279, 296 (1965)), there is a substantial risk that Plaintiffs will be subjected to the regulations. *Susan B. Anthony List,* 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5).

In addition to there being a substantial risk that Plaintiffs will be subjected to the regulations, Plaintiffs must show that a threatened, concrete injury is "imminent" to challenge the

6

regulatory scheme found in HISA. *Lujan*, 504 U.S. at 560. While Plaintiffs cannot show that they have been aggrieved by the regulatory scheme found in HISA, the Court agrees with the finding in *Nat'l Horsemen's* that "HISA requires that certain regulations be passed, showing that a concrete injury is 'certainly impending,' which will 'aggrieve'" Plaintiffs because they will be subjected to the allegedly unconstitutional rulemaking scheme and the Authority's alleged regulatory control. 2022 WL 982464, at *7 (quoting *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5)); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020)).

Plaintiffs' alleged certainly impending regulatory injury is also "fairly traceable" to the challenged rulemaking scheme. *Lujan*, 504 U.S. at 560. Plaintiffs challenge HISA's rulemaking scheme, which they allege subjects them to be unconstitutionally subjected to the Authority's regulatory control, "[a]nd, outside of interim final rules, all rules flow through the Authority-proposal-FTC-approval scheme." *Nat'l Horsemen's*, 2022 WL 982464, at *7 (citing § 3053). Therefore, the alleged regulatory injury is directly traceable to the allegedly unconstitutional regulatory scheme found in HISA.

Lastly, the Court finds that a decision in Plaintiffs' favor would likely redress their alleged certainly impending injury. Specifically, were the Court to find that HISA unconstitutionally

delegates legislative power to the Authority, a private entity, Plaintiffs would not be subjected to regulatory control under HISA. Accordingly, the Court finds Plaintiffs have standing to pursue their claims.

## 2. RIPENESS

"Ripeness requires that the 'injury in fact be certainly impending'" and "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) (citations omitted). Questions of ripeness require the Court to consider the following factors: (1) the likelihood that the alleged injury will come to pass; (2) the fitness of the issues for judicial decision at the pre-enforcement stage, meaning whether the record is adequately developed to produce a fair adjudication of the merits of the parties' claims; and (3) the hardship to the parties of withholding court consideration during the pre-enforcement stage. *Id.* at 284 (citing *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194-95 (6th Cir. 1988)).

In the present case, the first factor weighs in Plaintiffs' favor because without judicial intervention, the alleged injury is certain to occur, as discussed previously herein. Specifically, Plaintiffs will be subjected to an allegedly unconstitutional

rulemaking scheme that allows a private party to oversee them without sufficient governmental oversight.

A ripeness analysis requires the Court to analyze whether the claims were "amenable to judicial consideration *at the time the complaint was filed*," *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996) (emphasis added). However, Plaintiffs argue that the "challenge to HISA's constitutionality does not depend on the content of the regulations that are ultimately promulgated, but on the constitutionality of the organic statute itself." [DE 99, at 4 (citing [DE 87, at 32])]. Specifically, Plaintiffs claim, "[T]he regulatory structure established by HISA is unconstitutional and that the Authority and the FTC can accordingly take no action whatsoever pursuant to it. Those arguments are suitable for judicial resolution now." [DE 87, at 32]. For the following reasons, the Court agrees.

In two similar cases involving allegedly unconstitutional delegations of power, the Supreme Court of the United States "assessed the plaintiffs' claims by looking to the language of the statute to see if Congress unconstitutionally delegated power." *Nat'l Horsemen's*, 2022 WL 982464, at *9 (citing *Carter Coal Co.*, 298 U.S. at 311 (finding the statute at issue "conferred" regulatory power to "private persons"); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940) ("Since law-making is not entrusted to the industry, the statutory scheme is unquestionably

valid.")). "The inquiry is one of structural subordination and the agency's statutory surveillance and authority." *Id.* (citing *Adkins*, 310 U.S. at 399). Likewise, in *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.,* the D.C. Circuit found a pre-enforcement challenge to a statute was ripe because its constitutionality was a "purely legal question . . . appropriate for immediate judicial resolution." 721 F.3d 666, 672 n.6 (D.C. Cir. 2013), vacated on other grounds. Moreover, due process arguments involving allegedly self-interested actors regulating their competitors have been found to present purely legal questions. *See Nat'l Horsemen's*, 2022 WL 982464, at *9 (citing *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 32 (D.C. Cir. 2016) (finding self-interest based on the statutory language governing its incentives); *see also N. Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. 494, 510 (2015)). Therefore, the Court need not wait until HISA is in effect and applied to make an informed decision about the issues present in this matter because the constitutional challenges are to the statute itself and present purely legal questions regarding delegation and potential conflicts of interests concerning self-interested private entities regulating their competitors.

The remaining factor in the Court's ripeness analysis requires the Court to consider whether withholding a decision would cause Plaintiffs undue hardship. As discussed above, once HISA goes into effect on July 1, 2022, Plaintiffs will be subjected to

regulations that stem from an allegedly unconstitutional rulemaking scheme wherein the Authority, a private entity comprised of potentially self-interested individuals, funnels proposed rules to the FTC that the FTC allegedly has no choice but to accept. The Court's failure to address this matter before July 1, 2022, could result in harm to Plaintiffs. Therefore, this matter is ripe for review, and both the Authority Defendants' Motion to Dismiss [DE 68] and the Federal Defendants' Motion to Dismiss [DE 70] will be denied in part, insofar as they seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

## B. DISMISSAL UNDER 12(b)(6) AND SUMMARY JUDGMENT

### 1. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A motion to dismiss is properly granted if it is beyond doubt that no set of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the

complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pennington,* 553 F.3d at 450 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

12

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative

duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

## 2. DELEGATION OF POWER

"The Constitution vests '[a]ll legislative Powers herein granted' in the United States Congress—not in another branch of government nor in a private entity." *Nat'l Horsemen's*, 2022 WL 982464, at *11 (quoting U.S. Const. art 1, § 1). "Accompanying that assignment of power to Congress is a bar on its further delegation." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality).

"Supreme Court precedent provides that if an act of Congress lays down an intelligible principle, then an agency does not wield any 'legislative power' when enacting binding rules according to that principle." *Nat'l Horsemen's*, 2022 WL 982464, at *11 (citing *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013); *INS v. Chadha*, 462 U.S. 919, 953 n.16 (1983)). Agency rulemaking and adjudicating may take "'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must* be exercises of—the 'executive power.'" *City of Arlington*, 569 U.S. at 304 n.4. Therefore, "if Congress lays down an intelligible principle in a statute and also properly gives a private party power to help an agency administer that statute, no Article I delegation problem could arise," as the legislative

power remains with Congress. *Nat'l Horsemen's*, 2022 WL 982464, at *11 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14 (1976) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'") (quoting *Dixon v. United States*, 381 U.S. 68, 74 (1965))).

"An intelligible principle, however, 'cannot rescue a statute empowering private parties to wield regulatory authority.'" *Id.* at 12 (quoting *Amtrak I*, 721 F.3d at 671). Regulation is "necessarily a governmental function." *Carter Coal Co.*, 298 U.S. at 310–11. "Private parties may play a role in the regulatory process only if they 'function subordinately' to an agency." *Nat'l Horsemen's*, 2022 WL 982464, at *12 (*Adkins*, 310 U.S. at 399). Accordingly, "HISA must contain an intelligible principle guiding the Authority and the FTC, ensuring that Congress has not given away its legislative power under Article I," and "the Authority must function subordinately to the FTC, subject to its authority and surveillance . . . ." *Id.* at 13.

### a. INTELLIGIBLE PRINCIPLE

"[The Supreme] Court has held that a delegation is constitutional so long as Congress has set out an 'intelligible principle' to guide the delegee's exercise of authority." *Gundy,*

139 S. Ct. at 2129 (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). "[T]he Court has stated that a delegation is permissible if Congress has made clear to the delegee 'the general policy' he must pursue and the 'boundaries of [his] authority.'" *Id.* (quoting *American Power & Light v. SEC*, 329 U.S. 90, 105 (1946). Generally, Congress is not second-guessed "'regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" *Id.* (quoting *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 474-475 (2001)). In fact, the Supreme Court has only found two delegations to be unconstitutional, *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), because "'Congress had failed to articulate *any* policy or standard' to confine discretion." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 373 n. 7 (1989)). However, "the Supreme Court has 'blessed delegations that authorize regulation in the 'public interest' or to 'protect the public health'' or to set 'fair and equitable' prices." *Nat'l Horsemen's*, 2022 WL 982464, at *14 (quoting *Big Time Vapes, Inc. v. Food & Drug Admin.*, 963 F.3d 436, 442 n.18 (5th Cir. 2020) (citing *Whitman*, 531 U.S. at 472; *Nat'l Broad Co. v. United States*, 319 U.S. 190, 225-26 (1943); *Yakus v. United States*, 321 U.S. 414, 426-27 (1944))).

Here, HISA's policy "expressly defines the FTC's and Authority's purposes and jurisdictional boundaries." *Id.* (citing

§ 3054). "Congress sought to develop an 'independent and exclusive national' scheme to protect 'the safety, welfare, and integrity of covered horses, covered persons, and covered horseraces' through the 'horseracing anti-doping and medication control program and the racetrack safety program.'" *Id.* (quoting § 3054(a)). "This policy communicates Congress' desire to protect the safety and integrity of horseracing through nationalizing and streamlining regulation under two specific programs, which are outlined in greater detail in sections 3055 and 3056." *Id.* "HISA, however, does not affect existing federal and state regulation on any 'matters unrelated to antidoping, medication control and racetrack and racing safety of covered horses and covered races.'" *Id.* (quoting § 3054(k)(3)). Additionally, "Congress both 'recognized' the Authority as a 'private, independent, self-regulatory, nonprofit corporation' for 'purposes of developing and implementing' HISA's two programs and tasked the FTC with 'oversight' so that only the FTC possessed the power to give draft rules the force of law." *Id.* at 15 (quoting §§ 3052(a), 3053).

In addition to a clearly defined policy, HISA sets clear boundaries for what is delegated to the Authority. "Under HISA, the FTC shall approve proposed rules if they are 'consistent with (A) this [statute] and (B) applicable rules approved by the [FTC].'" *Id.* (quoting § 3053(c)(2)). "HISA limits the scope of rulemaking to medication control and racetrack safety." *Id.*

(citing § 3052). "All other thoroughbred horseracing laws related to breeding, licensing, broadcasting, and the like remain 'unaffected.'" *Id.* (quoting § 3054(k)(3)). HISA then "outlines several 'considerations' the Authority must take into account in developing the horseracing and medication control program, the 'activities' of the program, and its baseline rules." *Id.* (quoting § 3055(b), (c), and (g)). "For the racetrack safety program, HISA requires the Authority to 'consider[ ]' existing safety standards, including those of three sources HISA lists; to incorporate twelve elements into the program; and to carry out specific 'activities' under the program." *Id.* (quoting § 3056 (a)–(c)). While these considerations are given to the Authority, they "apply equally to the FTC's review," because the FTC ultimately chooses whether to approve the Authority's proposed rules "if they are 'consistent with' the statute—and the statute contains those 'considerations.'" *Id.* (citing §§ 3053(c)(2); 3055(b)).

For the foregoing reasons, the Court agrees with the *Nat'l Horsemen's* Court that "[t]hese considerations, topics, and elements confine the bounds of Congress's delegated authority to provide a sufficient intelligible principle," and "HISA cabins Congress's delegation more than the many statutes the Supreme Court has upheld despite 'very broad delegations.'" 2022 WL 982464, at *16 (quoting *Gundy*, 139 S. Ct. at 2129). Next, the Court must determine whether HISA allows the FTC to maintain sufficient

"'authority and surveillance'" over the Authority to ensure that it functions as a subordinate private entity. *See Id.* (quoting *Adkins*, 310 U.S. at 399).

### b. SUBORDINATION

In *Carter Coal Co.*, the Supreme Court struck down the part of the Bituminous Coal Conservation Act of 1935 that allowed two-thirds of coal producers to set the maximum labor hours and minimum wages for the other coal producers and miners in the industry and found this was a "legislative delegation in its most obnoxious form" because it delegated power "to private persons whose interests may be and often are adverse to the interests of others in the same business." 298 U.S. at 310-11.

Following the Supreme Court's decision in *Carter Coal Co.*, Congress passed the Bituminous Coal Act of 1937, which removed the provisions of the 1935 statute that the Supreme Court found unconstitutional and "'made other substantive and structural changes,'" including "removing the private parties' regulatory power over their competitors." *Nat'l Horsemen's*, 2022 WL 982464, at *12 (quoting *Adkins*, 310 U.S. at 387). "Instead, the statute allowed the private parties to 'propose minimum prices' and other related standards to a government agency that could 'approve[], disapprove[], or modif[y]' those rules." *Id.* (quoting *Adkins*, 310 U.S. at 388). The Supreme Court found the revised scheme to be "unquestionably valid." *Adkins*, 310 U.S. at 388. "Specifically,

the Court held that Congress does not impermissibly delegate 'its legislative authority' to a private entity, when the entity 'function[s] subordinately" to a governmental agency." *Nat'l Horsemen's*, 2022 WL 982464, at *12 (quoting *Adkins*, 310 U.S. at 388). "When the agency retains the ability to 'determine the prices' and exercises 'authority and surveillance over' the private entity, 'law-making is not entrusted to the industry.'" *Id.*

"Lawmaking is also not entrusted to the industry when Congress conditions an agency's regulatory power on private party approval." *Id*. In *Currin v. Wallace*, "the Supreme Court upheld a scheme where a regulation could not take effect in a particular market without the approval of two-thirds of the regulated industry members in that market." *Id*. (citing *Currin v. Wallace*, 306 U.S. 1, 6, 15 (1939)). In *Currin*, the Supreme Court found, "[I]t is Congress that exercises its legislative authority in making the regulation and in prescribing the conditions of its application." 306 U.S. at 16. Likewise, in *Kentucky Div., Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, the Court of Appeals for the Sixth Circuit, relying on *Currin*, found, "[T]he horsemen's veto provision does not allow a private party to 'make the law and force it upon a minority'; rather, the veto is merely a condition established by Congress upon the application of Congress' general prohibition of

interstate off-track betting." 20 F.3d 1406, 1416 (6th. Cir. 1994). The Sixth Circuit held that the horsemen's veto was a waiver power rather than a delegation of legislative power. *Id.*

In the present case, Plaintiffs argue HISA violates the private nondelegation doctrine by placing the FTC in a merely ministerial role where the FTC is forced to act as a rubber stamp for the Authority's proposed rules because HISA specifies that the FTC "*shall* approve" the Authority's proposed rules if they are "consistent with" HISA and the Authority's prior approved rules. 15 U.S.C. § 3053(c)(2) (emphasis added). However, as the FTC correctly asserts, "[T]he standard the FTC employed is the same standard under which the Securities and Exchange Commission [("SEC")] decides whether to approve rules proposed by a self-regulating private entity." [DE 102, at 3 (citing 15 U.S.C. § 78s(b)(2)(C)(i))]. The FTC further correctly states, "[E]very court of appeals to consider a non-delegation challenge to this framework has rejected it." [DE 102, at 3 (citing *Sorrell v. SEC*, 679 F.2d 1323 (9th Cir. 1982) (quoting *R.H. Johnson & Co. v. SEC,* 198 F.2d 690 (2d Cir. 1952)); Senator McConnell Amicus Br., ECF No. 53 at 1, 10-11, Case No. 21-cv-71 (E.D. Tex., Apr. 30, 2021) (explaining that "'HISA is modeled on the Maloney Act,' which governs the SEC's relationship with FINRA")). Likewise, the *Nat'l Horsemen's* Court found, "HISA's consistency review tracks the SEC's review of FINRA rules," and "[u]nder the Maloney Act, the

SEC 'shall approve a proposed rule change of a self-regulatory organization' if 'consistent with' the requirements of the Maloney Act and applicable rules." 2022 WL 982464, at *22 (quoting 15 U.S.C. § 78s(b)(2)(C)(i)).

Nevertheless, Plaintiffs takes issue with the fact that the FTC can only disapprove rules that are inconsistent with HISA while the Authority has the power to "fill up the details" of HISA. [DE 104, at 2]. "Filling up the details has long been recognized as the very business of regulating." *Nat'l Horsemen's*, 2022 WL 982464, at *22 (citing *United States v. Grimaud*, 220 U.S. 506, 517 (1911)). Meanwhile, the FTC's ability to "review for consistency resembles an adjudicative, rather than regulatory, function akin to courts reviewing agency action for whether it is 'in excess of statutory jurisdiction, authority, or limitations.'" *Id.* (quoting 5 U.S.C. § 706(2)(C)). Since "Congress withheld the FTC's ability to modify proposed rules, the Authority wields greater power than FINRA and the private entities in *Adkins*." *Id.* However, while HISA is distinct from the Maloney Act and schemes on which it is modeled, HISA's unique "features do not take HISA outside established constitutional limits." *Id*.

The FTC argues, "Plaintiffs identify no authority for the proposition that discretion to define the precise contours and policy of regulation is the defining feature of rulemaking," [DE 102, at 3], and the *Nat'l Horsemen's* Court agrees, finding, "the

FTC has the power to approve, disapprove, and recommend modifications to the Authority's proposed standards, its inability to formally modify the Authority's rules is not fatal," 2022 WL 982464, at *23. As the *Nat'l Horsemen's* Court notes, "[T]he agency in *Currin* could not modify its regulation without industry approval. *See* 306 U.S. at 16. Nor could the FRA modify any standards without Amtrak's agreement, even after the arbitration provision had been severed. *See Amtrak IV*, 896 F.3d at 545." *Id*.

Plaintiffs contend the decision on this issue in *Nat'l Horsemen's* should not be relied upon by this Court because *Nat'l Horsemen's* was "constrained by precedent—in particular, *Texas v. Rettig*, 987 F.3d 518 (5th Cir. 2021)," which upheld a similar scheme that "'does not leave [the federal agency] free to disapprove or modify' the private entity's regulations." [DE 104, at 3 (citing *Nat'l Horsemen's*, 2022 WL 982464, at *23 (quoting *Texas v. Rettig*, 993 F.3d 408, 415 (5th Cir. 2021)))]. However, the *Nat'l Horsemen's* Court did not rely solely on *Rettig* to decide this issue. It also relied on the Supreme Court's decision in *Adkins*, which the Fifth Circuit and this Court agree "did not turn on the commission's ability to modify proposed rules," 2022 WL 982464, at *23, the Seventh Circuit's decision in *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013), and the Third Circuit's decision in *Todd & Co., Inc. v. S.E.C.*, 557 F.2d 1008, 1012 (3d Cir. 1977), which found, "Because the Commission the Commission . . . has the

power, according to reasonably fixed statutory standards, to approve or disapprove the Association's rules . . . the court found no merit in the unconstitutional delegation argument. Considering *Adkins, Aslin*, and *Todd & Co.* alongside the Fifth Circuit precedent in *Rettig*, the *Nat'l Horsemen's* Court, considering binding and persuasive authority, correctly found, "[c]ourts have limited their rulemaking analyses to whether the agency could 'approve or disapprove' the private entity's rules," 2022 WL 982464, at *23, and the undersigned agrees.

Furthermore, even though the ability to modify is not a necessary consideration to the rulemaking analysis, "the FTC retains the power to approve or disapprove all rules and, 'in the case of disapproval,' it 'shall make recommendations to the Authority to modify the proposed rule.'" *Id.* (quoting § 3053(c)(3)(A)). If the FTC disapproves a rule and makes recommendations to modify the proposed rule, the Authority may resubmit the proposed rule "if they 'incorporate the modifications recommended' by the FTC." *Id.* (quoting § 3053(c)(3)(B)). In the event the Authority fails to incorporate the FTC's recommended modifications, the FTC has the power to disapprove the proposed rule until the Authority makes the recommended modification, meaning the FTC retains the ability to control what becomes a binding rule and can contribute to the language of the proposed rule through recommendations that must be made for the Authority

to resubmit. "Though not the equivalent of drafting the rule itself, the power to approve, disapprove, or recommend modification subject to continued rejection ensures that the Authority still 'functions subordinately' to the FTC such that the FTC 'determines' the binding rules." *Id.* (quoting *Adkins*, 310 U.S. at 399). Therefore, HISA's rulemaking scheme does not violate the private nondelegation doctrine.

### c. THE AUTHORITY'S ENFORCEMENT POWERS

In addition to Plaintiffs' arguments against HISA's rulemaking scheme, Plaintiffs argue the Authority's enforcement powers violate the private nondelegation doctrine. [DE 87, at 45-47]. Specifically, Plaintiffs argue it is unconstitutional for the Authority to have the power to commence civil actions against regulated parties who violate HISA, 15 U.S.C. § 3054(j)(1), investigate potential violations and impose sanctions, 15 U.S.C. § 3054(c)(1)(A), and investigate, charge, and adjudicate potential anti-doping and medication control violations, 15 U.S.C. § 3055(c)(4(B). [DE 87, at 45-47]. However, as held in *Nat'l Horsemen's*:

> The Authority may only investigate rule violations according to "uniform procedures" reviewed and approved by the FTC, and they cannot impose any penalty or sanctions without providing due process and an impartial tribunal. §§ 3054(c), 3057(c)(3). Thus, even prior to FTC review, due process is baked into the system. Moreover, any Authority decision with final, legal effect is subject to de novo review by an ALJ, whose decision may then be reviewed de novo by the FTC. *See* §

> 3058(b), (c). This de novo review includes the ability to "reverse, modify, [or] set aside" any sanction of the Authority. *Id.* And any determination by an ALJ or the FTC is a "Final Decision" under the APA, enabling judicial review. § 3058(b)(3)(B); *see* § 3058(c)(2)(B); *see also* Administrative Procedure Act § 10, 5 U.S.C. § 704 (outlining judicial review of administrative agency decisions).

2022 WL 982464, at *24.

Moreover, such a delegation of power is not unheard of and has been upheld in similar instances. For example, "[t]he Maloney Act authorizes private entities to perform certain investigative and disciplinary functions, subject to the SEC's oversight." *Id.* (citing 15 U.S.C. § 78*o*-3(h)(3)), and "[t]his aspect of the Maloney Act has been upheld against constitutional challenges on many occasions," *Id.* (citing *Sorrell*, 679 F.2d at 1325–26; *Todd & Co.*, 557 F.2d at 1014; *R. H. Johnson & Co.*, 198 F.2d at 695). In these decisions, the courts focused "on the SEC's ability to review any disciplinary action de novo, which the FTC retains." *Id.* (citing *Sorrell*, 679 F.2d at 1326 & n.2 (citing *R. H. Johnson & Co.*, 198 F.2d at 695)). Like Plaintiffs' arguments regarding HISA's rulemaking scheme, Plaintiffs' enforcement power arguments also fail to show that HISA violates the private nondelegation doctrine.

### 3. THE AUTHORITY'S ALLEGED SELF-INTEREST

Plaintiffs also move for summary judgment because they argue HISA allows them to be regulated by self-interested competitors in violation of due process. [DE 87, at 53–54]. They correctly assert,

26

"Due process forbids an 'economically self-interested actor' from 'regulat[ing] its competitors.'" *Id.* at 53 (quoting *Ass'n of Am. R.Rs. V. U.S. Dep't of Transp.* ("*Amtrak III*"), 821 F.3d 19, 23 (D.C. Cir. 2016). Plaintiffs are also correct that "the *Carter Coal* Court held the Coal Conservation Act unconstitutional not only because it was an improper delegation of legislative authority to a private entity, but also because the act gave the majority of the industry 'the power to regulate the affairs of an unwilling minority.'" *Id.* at 53-54 (quoting 298 U.S. at 311). HISA states that the Authority is a "private, independent, self-regulatory, nonprofit corporation." § 3052(a). Plaintiffs argue self-interest is evidence because "[f]our of the nine members on the Authority's Board of Directors must be 'industry members selected from among the various equine constituencies.'" *Id.* at 54 (quoting 15 U.S.C. § 3052(b)(1)(B)).

As the *Nat'l Horsemen's* Court noted, and the parties in that case agreed, an inquiry regarding whether self-interest constitutes a due process violation is no different than an inquiry regarding the private nondelegation doctrine. 2022 WL 982464, at *25 (citing *Amtrak I*, 721 F.3d at 671 n.3). Accordingly, Plaintiffs' self-interest argument fails for the same reasons as its private nondelegation doctrine arguments discussed previously herein. Specifically, even assuming the Authority is, in whole or in part, comprised of self-interested competitors, the Authority

27

is subordinate to the FTC in the regulatory process. Therefore, the Authority is not regulating its competitors in violation of due process.

## 4. THE ANTICOMMANDEERING DOCTRINE

Plaintiffs argue HISA unconstitutionally commandeers the States by requiring them to fund the Authority's operations and conscripting them into helping the Authority carry out its operations. [DE 87, at 33-39]. "The anticommandeering doctrine . . . is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.,* the decision to withhold from Congress the power to issue orders directly to the States" and is confirmed by the Tenth Amendment. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475-76 (2018). As this Court has recognized, "[T]he Supreme Court has clearly stated that Congress may not pass legislation which requires a state to regulate or enforce a federal statute." *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.,* 9 F. Supp. 2d 766, 771-72 (E.D. Ky. 1998); *see also New York v. United States,* 112 S. Ct. 2408, 2429 (1992) ("[T]he Constitution simply does not give Congress the authority to require the States to regulate."); *Printz v. United States*, 521 U.S. 898, 935 (1997) ("Congress cannot . . . conscript[ ] the State's officers directly. The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their

28

political subdivisions, to administer or enforce a federal regulatory program.").

Here, the first provision Plaintiffs claim violates the anticommandeering doctrine is § 1203(f)(2), which provides that "states may 'elect[ ] to remit fees' on behalf of their members 'according to  a schedule established in a rule developed by the Authority and approved by the' FTC." [DE 70, at 34 (quoting § 1203(f)(2))]. Plaintiffs claim this provision "require[s] States . . . to remit State monies." [DE 87, at 34]. However, that is not the case. The States' remission of fees is clearly a choice they may elect to do so because § 1203(f)(3) provides that "[c]overed persons . . . shall be required to remit such fees to the Authority . . . [i]f a State racing commission does not elect" to collect the fees on their behalf. The provision neither requires the States to collect fees from covered persons nor does it involve state funds. Instead, it is merely a requirement on private entities, *i.e.,* the covered persons, to remit fees to the Authority. Any participation by the States regarding the collection of those fees is voluntary and would only involve money owed to the federal government, as opposed to State funds.

Under HISA, the consequence of a State not opting to collect the remitted fees from its members is that the State may not collect funds for related regulation of their own because HISA provides "'exclusive national authority' over covered activities

29

and state[s] that Authority rules 'shall preempt any provision of State law or regulation with respect to matters within the jurisdiction of the Authority under this Act.'" [DE 68, at 36 (quoting § 1205(a), (b)). Despite Plaintiffs claims to the contrary this is nothing more than a typical preemption scheme as outlined in *Murphy*, wherein the Supreme Court explained that preemption works as follows: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." 138 S. Ct. at 1480. As the Authority Defendants correctly assert, "HISA's funding provision 'operates just like any other federal law with preemptive effect' by 'confer[ing]on private entities (*i.e.*, covered [persons]) a federal right to engage in certain conduct subject only to certain (federal) constraints." [DE 68, at 36 (citing *Murphy*, 138 S. Ct. at 1480).

Next, Plaintiffs argue that HISA mandates the States cooperate with the Authority because § 1211(b) states that "[t]o avoid duplication of functions, facilities, and personnel, and to attain closer coordination and greater effectiveness and economy in administration of Federal and State law, where conduct by any person subject to" HISA's medication control or racetrack safety program "may involve both a" HISA rule "violation and violation of Federal or State law, the Authority and Federal or State law

enforcement authorities shall cooperate and share information." Plaintiffs argue that the inclusion of the phrase "the Authority and Federal or State law enforcement authorities shall cooperate and share information," is best understood to require the States to cooperate with the Authority. However, as Defendants contend, the better reading is that § 1211(b) is simply a requirement for the Authority to cooperate with the States not the other way around, as Plaintiffs insist.

While Plaintiffs assert that the plain meaning of § 1211(b) confirms cooperation is mandated for both the Authority and the States, Plaintiffs' interpretation requires that the provision be read in a vacuum instead of considering it in the context of the statute in its entirety. The Federal Defendants are correct that the provisions meaning is clear since "HISA's primary objective is to create a framework for regulatory action; to that end, its provisions define the duties and obligations of the Authority, its relationship with the FTC, and the obligations of persons that would be subject to the rules under HISA." [DE 70, at 37 (citing HISA §§ 1203-1209)]; *see also* Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."). Therefore, the Court finds that HISA does not violate the anticommandeering doctrine.

## 5. THE AUTHORITY AS A PUBLIC ENTITY

Plaintiffs make several alternative arguments in case the Court finds the Authority to be a public entity, including that its structure violates the Appointments Clause, its officers are not properly removable under Article II and the separation of powers, and it violates the public nondelegation doctrine. *See* [DE 87, at 54-61]. However, as repeatedly stated herein, in HISA, *see* § 3052(a), and in Plaintiffs' Amended Complaint [DE 53, at 5, 17, 41, 42, 43, 44, 45, 51], the Authority is a private entity. Therefore, the Court need not consider Plaintiffs' alternative arguments regarding the Authority as a public entity.

## II. CONCLUSION

The Court, having considered the matters fully, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) The Authority Defendants' Motion to Dismiss [DE 68] and the Federal Defendants' Motion to Dismiss [DE 70] are **DENIED IN PART**, insofar as they seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, and **GRANTED IN PART**, insofar as they seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted;

(2) Plaintiffs' Motion for Summary Judgment [DE 87] is **DENIED**;

(3) This matter is **DISMISSED WITH PREJUDICE**; and

(4) This is a final and appealable order.

32

This 3rd day of June, 2022.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge